Ali FARRED, Plaintiff–Appellant,

v.

J.M. HICKS, Officer, DeKalb County Police Department, A.B. Blaisdell, Defendants–Appellees.

No. 89–8182.

United States Court of Appeals, Eleventh Circuit.

Oct. 31, 1990.

J. Randolph Evans, Jr., Arnall Golden & Gregory, Atlanta, Ga., for plaintiff-appellant.

Albert Sidney Johnson, Office of Dekalb Co. Atty., Decatur, Ga., Harry W. MacDougald, Johnson & Montgomery, Atlanta, Ga., for defendants-appellees.

Before JOHNSON and HATCHETT, Circuit Judges, and SMITH *, Senior Circuit Judge.

HATCHETT, Circuit Judge.

In addition to other issues, the parties urge us to venture into Georgia's unsettled law regarding the preclusive effect of state criminal actions upon subsequent civil actions. Because we are bound by Eleventh Circuit precedent, we follow it, leave the Georgia law on collateral estoppel unsettled, and reverse the district court.

## FACTS

On January 29, 1987, J.M. Hicks, a police officer in the DeKalb County Police Department, detained Ali Farred as he walked in the vicinity of Chestnut Hills Circle and Twin Falls Drive in Decatur, Georgia. Of-

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designa-

ficer Hicks asked Farred for identification. Farred responded that he had no identification, but gave his name and date of birth.

Officer Hicks then told Farred that he matched the description of a man observed leaving the scene of a nearby burglary, and requested Farred to accompany him to the crime scene. Farred claims that he refused to accompany Officer Hicks, telling him that he had to catch a bus. According to Farred, Hicks then placed him in handcuffs, searched the case he was carrying, and took him to the scene of the burglary. Hicks disputes these allegations, contending that Farred voluntarily agreed to his request.

After witnesses at the crime scene identified Farred as the person seen walking in the vicinity of the burglarized house, Hicks arrested Farred, searched him, and took him to the police station. At the police station, A.B. Blaisdell, a police officer in the DeKalb County Police Department, again searched Farred.

Before Farred's criminal trial, he moved to suppress all evidence from the search and seizure on the ground that Hicks lacked probable cause to make an arrest. After a hearing, the state trial court denied Farred's motion to suppress. The case went to trial, and a state court jury acquitted Farred on the burglary charge.

## PROCEDURAL HISTORY

After his acquittal, Farred, proceeding without the assistance of counsel, initiated this civil rights action pursuant to 42 U.S.C. § 1983. Farred alleges that Hicks, Blaisdell, and the unnamed head of the DeKalb County Police Department, in their individual and official capacities, violated his fourth amendment right to be free from unreasonable searches and seizures and various provisions of Georgia law. Farred seeks compensatory and punitive damages.

In September, 1988, Hicks, Blaisdell, and the head of the DeKalb County Police Department moved to dismiss the action pur-

tion.

suant to Federal Rule of Civil Procedure 12(b)(6). The police officers argued that they could not be held liable in their official capacities because Farred had failed to allege that DeKalb County had a policy, custom, or practice which resulted in a constitutional deprivation. Further, regarding the individual claims against Hicks and Blaisdell, they contended that the district court should grant their motion to dismiss because Farred was collaterally estopped from litigating his claims relating to the search and seizure. Specifically, the police officers argued that those issues (e.g. whether the search and seizure were supported by probable cause) had been the subject of the motion to suppress in the state criminal case, and had been decided adversely to Farred.

On January 4, 1989, the district court dismissed Farred's official-capacity claims against the police officers concluding that Farred had failed to allege that a policy or inadequate training had led to his arrest. As to Farred's claims that Hicks and Blaisdell were liable in their individual capacities, the district court converted the motion to dismiss (which raised the collateral estoppel defense) into a motion for summary judgment, and requested that the police officers file a transcript of the suppression hearing held in the state court. On February 7, 1989, the district court granted summary judgment in favor of Hicks and Blaisdell, in their individual capacities, based on collateral estoppel.

### CONTENTIONS

Farred contends that the district court: (1) improperly dismissed his official-capacity claims against the police officers and the head of the DeKalb County Police Department because the complaint contained sufficient allegations that a custom or policy caused the constitutional deprivations; (2) erroneously applied collateral estoppel principles to bar his remaining claims; and (3) erred when it granted summary judgment because it failed to give him adequate notice of its intent to treat the motion to dismiss as a motion for summary judgment. In response, the police officers con-

tend that the district court ruled properly on all issues.

### ISSUES

We address the following issues:

1. Whether the district court properly dismissed Farred's official-capacity claims pursuant to Fed.R.Civ.P. 12(b)(6);

2. Whether the district court erred when it applied the doctrine of collateral estoppel to preclude Farred from litigating his claims against Hicks and Blaisdell in federal court; and

3. Whether the district court provided adequate notice when it converted the motion to dismiss into a motion for summary judgment.

### DISCUSSION

1. Official–Capacity Liability

██ Farred contends that the district court erred when it dismissed his official-capacity claims against Hicks, Blaisdell and the head of the DeKalb County Police Department. Fed.R.Civ.P. 12(b)(6). The district court dismissed these claims on the ground that Farred failed to allege that "the DeKalb County Police Department had a policy or inadequate training program that led to his arrest." We will affirm the district court's decision to dismiss on the pleadings if "it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of the complaint's allegations." *Arnold v. Board of Education of Escambia County, Alabama,* 880 F.2d 305, 309 (11th Cir.1989).

██ Where, as here, a section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit is in actuality against the governmental entity that the individuals represent. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Governmental entities may be held liable under section 1983 when a governmental "policy or custom" is the "moving force" behind the constitution-

al deprivation. *Kentucky v. Graham,* 473 U.S. at 166, 105 S.Ct. at 3105; *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Under certain circumstances, a police department's failure to adequately train its officers may constitute a "policy" giving rise to governmental liability. *See Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (inadequacy of police training regarding administration of medical care to person in police custody may serve as basis of section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact).

Our review of the complaint reveals that Farred alleges sufficient facts, amounting to a "policy or custom," to state a claim against Hicks, Blaisdell and the head of the DeKalb County Police Department in their official capacities. First, because Farred was proceeding without the assistance of counsel when he filed this lawsuit, his complaint should be construed liberally. *See, e.g., Gwin v. Snow,* 870 F.2d 616, 625 (11th Cir.1989). Second, Farred specifically alleges that "the DeKalb County Police Department has failed to effectively train him [Hicks] not to unlawful [sic] detain a person without probable cause to arrest...." We hold that these allegations are sufficient to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

2. Collateral Estoppel

 In *Webb v. Ethridge,* 849 F.2d 546, 549 (11th Cir.1988), we held that the "rules of collateral estoppel apply to actions brought under 42 U.S.C. § 1983 and can give preclusive effect to judgments rendered in state criminal proceedings." *See also Allen v. McCurry,* 449 U.S. 90, 97–98, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980). "Because the federal full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do so, we must look to the operation of the state's law of collateral estoppel." *Webb,* 849 F.2d at

549. Consequently, in determining whether the district court properly concluded that Farred is collaterally estopped from litigating his claims (based upon the alleged illegal search and seizure), we look to the preclusion law of the state of Georgia. While application of collateral estoppel is a matter of district court discretion, we exercise plenary review over the rules governing collateral estoppel. *Balbirer v. Austin,* 790 F.2d 1524, 1526 (11th Cir.1986).

 Farred contends that the district court erred in applying collateral estoppel to bar his claims. Specifically, Farred argues that collateral estoppel has no application in this case because Georgia law would not give the state court's suppression ruling preclusive effect in this proceeding because the two actions—the state court criminal case and this section 1983 lawsuit—are not between identical parties or their privies (i.e. no "mutuality"). *See Webb,* 849 F.2d at 549; *Norris v. Atlanta & West Point R. Co.,* 254 Ga. 684, 333 S.E.2d 835, 837 (1985) ("[c]ollateral estoppel, like res judicata, requires identity of parties or privity. However, unlike res judicata, collateral estoppel does not require identity of the claim but only precludes readjudication of an issue already adjudicated between the parties or their privies in a prior action."). The police officers respond that the district court did not err because Georgia has abandoned the mutuality requirement for collateral estoppel. *See Watts v. Lippitt,* 171 Ga.App. 578, 320 S.E.2d 581, 582 (1984).

In *Webb,* we concluded that "Georgia retains the old 'mutuality' rule of collateral estoppel requiring an 'identity of parties or their privies' to bar a second law suit." 849 F.2d at 549. Although we acknowledge that the law governing collateral estoppel in the state of Georgia appears to be "unsettled," we are bound by our holding in *Webb. See Gwin,* 870 F.2d at 623–24 (only en banc court can overrule a binding decision).

Applying *Webb* to the facts of this case, we hold that Farred is not collaterally estopped from litigating his claims in federal

court because the police officers failed to satisfy the "mutuality" requirement. First, although Farred was a party in the state criminal proceeding and is a party in this civil case, neither the police officers nor the head of the DeKalb County Police Department were parties to the criminal case. Second, as we concluded in *Webb*, which also involved a section 1983 action where the plaintiff alleged that police officers had unlawfully arrested him, Georgia law does not recognize "privity" between local police officers and the state of Georgia. *See Webb*, 849 F.2d at 459; *see also Smith v. Wood*, 115 Ga.App. 265, 154 S.E.2d 646, 649–50 (1967). Consequently, the district court erred when it concluded that the doctrine of collateral estoppel barred Farred from litigating his claims in federal court.

### 3. Proper Notice

 When a district court converts a rule 12(b)(6) motion to dismiss into a rule 56(c) motion for summary judgment, and the non-moving party is not represented by counsel, the district court is required to give "clear notice of the need to file affidavits or other responsive materials and of the consequences of default." *United States v. One Colt Python .357 Caliber Revolver*, 845 F.2d 287, 289 (11th Cir.1988). Farred contends that the district court failed to give him adequate notice when it converted the motion to dismiss into a motion for summary judgment.

Although the district court stated in its January 4, 1989, order that it intended to treat the motion to dismiss as a motion for summary judgment, and gave the parties 30 days to submit additional materials, it did not specifically inform Farred of (1) the need to file affidavits or other responsive materials, and (2) of the consequences of default. *See One Colt Python*, 845 F.2d at 289. Consequently, we find that the district court failed to provide Farred with proper notice when it converted the motion to dismiss into a motion for summary judgment.

### CONCLUSION

We express no opinion on the merits of the claims.

In sum, we hold that the district court erred when it (1) dismissed Farred's official-capacity claims, (2) did not give Farred proper notice of its intention to treat the motion to dismiss as a motion for summary judgment, and (3) entered summary judgment against Farred on the basis of collateral estoppel. Accordingly, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

VACATED and REMANDED.