Margaret **SANDERS,** as **Administratrix of the Estate of Darrell L. Sanders, Margaret Sanders and Damon Sanders, Plaintiffs,**

v.

Hollis **HOWZE, Sam Law, Tim Cosby and David Wortley, in their individual and official capacities, and Dougherty County, Georgia, Defendants.**

No. 1:95–CV–21 (WLS).

United States District Court, M.D. Georgia, Albany Division.

March 19, 1998.

Chevene Bowers King, Jr., Albany, GA, for plaintiffs.

Donald A. Sweat, Albany, GA, for defendants.

## ORDER

SANDS, District Judge.

Plaintiffs filed their original § 1983 claim on February 7, 1995 and their first amended complaint on September 17, 1996, alleging defendants violated plaintiffs' decedent's rights under the Eighth and Fourteenth Amendments. Presently before the court is defendants' Motion for Summary Judgment.

## BACKGROUND

The facts the parties can agree on are as follows: Plaintiffs' decedent, Darrell Sanders ("Sanders"), was arrested and jailed in the Dougherty County Jail on or about July 6, 1989. On approximately August 19, 1989, Sanders removed a razor blade from a disposable razor and cut his wrists. He was transported to Phoebe Putney Memorial Hospital for treatment of his wounds and thereafter to Southwestern State Hospital in Thomasville, Georgia for a psychological evaluation. Sanders returned to the Dougherty County Jail on or about October 31, 1989. Upon his return, he was placed in an isolation cell near the jailers' office. Sanders was issued socks, jogging pants, a shirt and a bed sheet.

On November 3, 1989, Sanders appeared in court, and the judge signed an order stating that it appeared Sanders may be suffering from a mental illness, and ordering the sheriff to arrange for a psychiatric evaluation to be conducted by Southwestern State Hospital, at a place of to be determined by the hospital's staff. However, Sanders was found dead in his cell on November 8, 1989 at 6:05 a.m., where he had hung himself from the light fixture with the bed sheet.

## DISCUSSION

■ There are very significant facts in this case which are disputed. Nevertheless, defendants argue that they are entitled to summary judgment, alleging failure to state cognizable claims under §§ 1983 and 1985, qualified immunity, and lack of official policy resulting in plaintiffs'

harms[1]. Defendants are entitled to summary judgment if there are no genuine issues of material fact. For issues upon which plaintiffs bear the burden of proof, defendants may show merely an absence of evidence; however, for issues upon which defendants bear the burden, they must affirmatively show the absence of an issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir.1993).

*Failure to State Claim*

Defendants argue that plaintiffs have failed to state a claim under § 1983 because they have failed to allege more than negligence. Any person who, under color of law, deprives another of his constitutional rights may be held liable in a civil action. 42 U.S.C. § 1983. Clearly, then, § 1983 actions cannot stand alone; they require the violation of a constitutional right *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Here, plaintiffs have alleged that defendants, under color of law, deprived Sanders of his Eighth and Fourteenth Amendment rights.

■ Defendants argue that plaintiffs must "show" and "prove" various facts, but that is not the standard for stating a claim. A claim may not be dismissed unless, as alleged, plaintiffs could not prove any set of facts entitling them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In making its analysis, the court must presume true all of plaintiffs' allegations and make all reasonable inferences in the light most favorable to the plaintiffs. *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

■ The Fourteenth Amendment prohibits the deprivation of life, liberty or property without due process of law. Such deprivation must be carried out with gross negligence or deliberate indifference. *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987). Plaintiffs have alleged that defendants were grossly negligent in failing to prevent Sanders from taking his own life. As stated, this is a cognizable claim under § 1983 for violation of the Fourteenth Amendment.

■ The Eighth Amendment prohibits cruel and unusual punishment, which includes deliberate indifference to a prisoner's taking of his own life. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 (11th Cir.1989), *citing Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Plaintiffs allege that defendants intentionally failed to perform certain acts, and were, therefore, deliberately indifferent to Sanders' suicidal propensity, thereby stating a cognizable claim under § 1983 for violation of the Eighth Amendment. Defendants' motion is denied as to this claim.

*Qualified Immunity*

■ Under the doctrine of qualified immunity,

> "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether qualified immunity is available as a defense is a question of law for the court. *Ansley v. Heinrich*, 925 F.2d 1339, 1341 (11th Cir.1991).

**1.** At a hearing on the motion held July 16, 1996, plaintiffs' counsel dropped the § 1981 claim, the § 1986 claim as to the parents only, and the state law claims against the county. Furthermore, in their amended complaint, plaintiffs omit all claims other than the § 1983 claim. These argument will, therefore, not be addressed here.

■ The Eleventh Circuit has set out a two-part "objective reasonableness" test for qualified immunity cases. First, the defendants must show they were acting within their discretionary authority when the wrong occurred. Once they have done so, the burden shifts to plaintiffs to show defendants' actions violated clearly established constitutional laws. *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988), *citing Zeigler v. Jackson,* 716 F.2d 847 (11th Cir.1983).

The parties do not appear to dispute the first element of this test. There was, however, some dispute over what the "clearly established" law is in this matter. There can be no question, however, that at a minimum the clearly established law was that defendants will not be deliberately indifferent to a prisoner's taking of his own life. *Edwards v. Gilbert,* 867 F.2d at 1274.

■ "In the context of jail suicides, an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies." *Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir.1990). In general, the prison suicide cases split down the middle into those where the officials were aware of the potential for suicide and those where they were unaware; summary judgment on the grounds of qualified immunity is usually granted where defendants had no warning of decedent's suicide attempt. *Haney v. City of Cumming,* 69 F.3d 1098 (11th Cir. 1995); *Tittle v. Jefferson County Commission,* 10 F.3d 1535 (11th Cir.1994); *Schmelz v. Monroe County,* 954 F.2d 1540 (11th Cir.1992); *Popham v. City of Talladega,* 908 F.2d 1561; *Edwards v. Gilbert,* 867 F.2d 1271. Here, even from the limited evidence produced, it is clear defendants had ample and serious warning of Sanders' potential for suicide.

In response to plaintiffs' failure to supervise claim, defendants cite the court to *Belcher v. City of Foley, Ala.,* 30 F.3d 1390 (11th Cir.1994), in which the jail officials had warning of decedent's predilection for suicide, but were granted summary judgment on qualified immunity grounds. While not disagreeing with *Belcher,* this court cannot follow it. At this point in time, this case is grossly lacking in material facts, without which the court cannot determine, as the court did in *Belcher,* that the case law does "not clearly establish that *measures materially similar to those taken by [the defendants]* to prevent Mr. Belcher from committing suicide, were so inadequate as to constitute deliberate indifference." *Id.,* at 1401. The Eleventh Circuit had the benefit of significant facts with which to reach this decision, namely the measures taken by the defendants; this court does not have that information. For example, plaintiffs claim that Sanders was not checked for four to six hours, which, if true, could support a finding of deliberate indifference to the taking of his own life. Without more in the record, this court cannot find that defendants are necessarily entitled to qualified immunity. *Greason v. Kemp,* 891 F.2d 829, (11th Cir. 1990).

Defendants further argue that plaintiffs have failed to carry their burden because they have not put forth any cases which hold it is deliberate indifference to give a potential suicide a bed sheet. This argument is specious. The court is not required, nor would any jail want the court to dictate every action jail officials can and cannot take. The point of qualified immunity is to allow government officials to make *reasonable* discretionary decisions without fear of reprisal, not just any discretionary decision. Even when left to their own discretion, in other words when the court has not clearly ruled on a specific action, defendants are required to be reasonable and not be deliberately indifferent. This was the clearly established law at the time of Sanders' suicide. And although

giving Sanders a sheet may not, in and of itself, have been unreasonable, when combined with the other facts plaintiffs allege, such as the failure to inspect for four to six hours, it takes on a greater potential for deliberate indifference. The court finds, therefore, that there is a material question of fact as to whether defendants were deliberately indifferent to Sanders' taking of his own life and therefore whether they are entitled to qualified immunity.

*Official Capacity Liability*

■ A suit against officers in their official capacities is actually a suit against the entity that employs them. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Government entities are not entitled to immunity where a policy or custom is the "moving force" behind the constitutional violation. *Farred v. Hicks*, 915 F.2d 1530, 1532–1533 (11th Cir.1990), *citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Plaintiffs claim that defendants were not properly trained in dealing with potential suicides and that defendants' policies were inappropriate. In response, defendants argue that their medical policy was perfectly adequate and that plaintiffs cannot cite to any other policy which amounts to deliberate indifference. In their response to defendants' motion, plaintiffs' counsel indicated the last-minute discovery of a potential witness who could provide facts concerning defendants' policies regarding potential suicides. In light of this, and defendants' failure to tell the court what their policies are, the court cannot in good conscience grant summary judgment on official immunity grounds.

Because defendants filed their motion prior to the expiration of discovery, the parties' focus shifted from discovering the facts to fleshing out the law. As a result, there are insufficient facts before this court to make an adequate ruling on defendants' motion. This order will hereby serve to clarify the law that existed at the time Sanders killed himself; it does not claim to state that defendants are not entitled to qualified immunity based on the facts in this case. As discovery of the necessary facts in this case was abandoned prior to completion, the court hereby rules that:

1. The parties are to submit an amended Proposed Scheduling and Discovery Order Under Rule 16(b) and 26(f) by March 30, 1998.

2. Said order will set out the time to complete discovery as ninety (90) days from March 30, 1998.

3. Said order will set out the time for dispositive motions as twenty (20) days from the date discovery is completed.

4. Said order will include any objections to the order, form, schedule or extent of discovery. Discovery shall otherwise proceed despite any objections. Any objections will be handled by order or hearing as may be directed by the court.

Defendants' Motion for Summary Judgment is hereby DENIED without prejudice to later refile a dispositive motion after discovery is completed.